SAGAR RAICH, ESQ. (SBN: 330427)
BRIAN SCHNIEDER, ESQ. (SBN: 260880)
**RAICH LAW PLLC**
6785 S. Eastern Ave., Suite 5
Las Vegas, NV 89119
Telephone: (702) 758-4240
Facsimile: (702) 998-6930
Email: sraich@raichattorneys.com
bschneider@raichattorneys.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA KLINE, an Individual; JACOB KLINE, an Individual; and WALTER KLINE, an individual,<br><br>          Plaintiffs,<br>vs.<br><br>BRIAN QUINN, an Individual; MICHAEL SWAN, an Individual; ONOREVOLE CONSULTING GROUP, INC., a California Stock Corporation; PRIVCAP GROUP, LLC, a Delaware Limited Liability Company; LUXURY ASSET LENDING, LLC, a Delaware Limited Liability Company,<br><br>          Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**(1)     Fraud**<br><br>**(2)     Financial Elder Abuse**<br><br>**(3)     Violation of California Business and Professional Code § 17200,** *et seq*. |

PLEASE TAKE NOTE that Plaintiffs, Cynthia Kline, Jacob Kline, and Walter Kline by and through their attorneys of record, SAGAR RAICH, ESQ. of RAICH LAW PLLC, allege as follows:

## SUMMARY OF ALLEGATIONS

Commencing with deceptive emails, acting under Quinn's direction, Swan attempted to entice Plaintiffs to invest in Medupure Holding, Inc. ("Medipure") shares. Quinn, posing as the CEO of Medipure, Inc., orchestrated multiple stock transactions, totaling $170,000.00, by leveraging his "affiliation" with Medipure. Subsequently, upon discovering Medipure Holding, INC.'s bankruptcy on March 20, 2023, Plaintiffs realized the extent of the misrepresentation. Moreover, during a meeting with Swan on March 23, 2023, it was revealed that Quinn never had possession of any Medipure stocks. This complaint is filed to seek redress for the alleged fraud, elder abuse, and the resultant damages inflicted upon the Plaintiffs.

## JURISDICTION

1. This Court has jurisdiction under 28 USC § 1332 as all Plaintiffs are citizens of Nevada and all Defendants are citizens of California or, alternatively, Delaware and the amount in controversy exceeds $75,000.

## VENUE

2. Venue is proper in the Southern District of California under 28 U.S.C. § 1391 because the majority of defendants reside there.

## PARTIES

3. Plaintiff Cynthia Kline is, and at all times material hereto, was an individual residing in Clark County, Nevada.

4. Plaintiff Jacob Kline is, and at all times material hereto, was an individual residing in Clark County, Nevada.

5. Plaintiff Walter Kline is, and at all times material hereto, was an individual residing in Clark County, Nevada.

6. Defendant ONOREVOLE CONSULTING GROUP, INC., ("Onorevole") is, and at all times material hereto, was a California Stock Corporation.

7. Defendant PRIVCAP GROUP, LLC, ("Privcap") is, and at all times material hereto, was a Delaware Limited Liability Company, having its business operations in the Southern District of California.

8. Defendant Brian Quinn ("Quinn") is, and all times material hereto, was an individual residing in Orange County, California.

9. Defendant Michael Swan ("Swan") is, and all times material hereto, was an individual residing in San Diego County, California.

10. Defendant LUXURY ASSET LENDING, LLC ("Luxury") is, and all times material hereto, was a Delaware Limited Liability Company, having its business operations in Southern District of California.

//

//

//

## FACTUAL ALLEGATIONS REGARDING AGENCY

11.  Based on information and belief, at all times relevant herein, Defendants and each of them, were the agents, servants, alter egos, employees, representatives, joint venturers of every other Defendant and at all times mentioned herein were acting within the course and scope of said agency, representation, employment, or joint venture, with knowledge, permission, or express or implied consent of all other named Defendants.

## ALLEGATIONS COMMON TO ALL CLAIMS

12.  On December 19, 2019, Swan, acting with and at the direction of Quinn, emailed Plaintiffs for the purpose of enticing them to purchase shares of Medipure.

13.  In the email sent December 19, 2019, Swan stated that these shares were available at a rate of $2.50 per share and Plaintiffs were to acquire a minimum of 10,000 shares.

14.  Swan further enticed Plaintiffs by stating 25,000 shares will sell for a total profit of $187,500.00 in the following year if sold at the estimated $10.00 rate.

15.  On December 20, 2019, Plaintiffs Cynthia Kline and Walter Kline paid $80,000.00 to Quinn, who misrepresented himself as the CEO of Medipure, Inc.,

for 32,000 shares of Medipure under a written agreement. A true and correct copy of which is attached as Exhibit 1.

16. On August 25, 2020, Plaintiffs, through Quinn, paid for an additional 10,000 shares in Medipure stocks for $5,000.00. A true and correct copy of which is attached as Exhibit 2.

17. On August 25, 2020, in a separate transaction with Quinn Plaintiff Jacob Kline paid for 8,000 shares in Medipure stocks for $20,000.00 . A true and correct copy of which is attached as Exhibit 3.

18. On October 5, 2020, Plaintiffs Cynthia Kline and Walter Kline paid Quinn an additional $15,000.00 for 6,000 shares of Medipure. A true and correct copy of which is attached as Exhibit 4.

19. On January 21, 2021, Plaintiffs Cynthia Kline and Walter Kline paid Quinn $25,000.00 for an additional 10,000 shares of Medipure stock. A true and correct copy of which is attached as Exhibit 5.

20. On February 4, 2021, Plaintiffs Cynthia Kline and Walter Kline paid Quinn $25,000.00 for an additional 10,000 shares of Medipure stock. A true and correct copy of which is attached as Exhibit 6.

21. In all, Plaintiffs' paid $170,000.00 to Quinn for shares in Medipure. Quinn never provided countersigned copies of the purchase agreements to Plaintiffs.

22. Quinn was not and never was an officer, agent, representative, or vendor of Medipure stock.

23. Plaintiffs also never acquired any shares of Medipure.

24. On March 20, 2023, Plaintiffs became aware that Medipure had filed for bankruptcy.

25. Plaintiffs were unaware of the financial status of Medipure until the receipt of the bankruptcy notice as they believed that Quinn was the CEO of Medipure and also believed his representations regarding the status of the company and that they had purchased shares in Medipure, when, in fact, Quinn had merely represented that they had.

26. Swan set up a meeting with Quinn for March 23, 2023 to discuss the next course of action in conjunction with Apogee, the entity that assumed control of Medipure's assets. However, Quinn failed to attend meeting.

27. Quinn repeatedly stated that the meeting would be to obtain stock from Apogee that would be allocated to the investors who had paid Quinn for shares in Medipure.

28. However, during the March 23rd meeting, Apogee clarified to Plaintiffs that they were not giving any stock to Quinn or anyone else, but rather were providing an opportunity to purchase Medipure stock.

29. At that meeting, Apogee confirmed to Plaintiffs that Quinn never purchased nor had possession of any Medipure stocks.

30. Instead, Quinn had only a right to a distribution of shares from Medipure under a settlement agreement, but that distribution never took place.

31. On or around October 2023, Plaintiffs Cynthia Kline and Walter Kline, based on their prior personal relationship with Swan, loaned Swan $10,000.00 to settle his outstanding debt to Plaintiff Jacob Kline.

32. Swan agreed to pay back the loan within thirty to sixty days but failed to fulfill this agreement.

33. In an attempt to make the loan repayment, Swan offered Plaintiffs Cynthia Kline and Walter Kline the opportunity to purchase stocks in a company Quinn was associated with, to which the Plaintiffs refused.

34. Quinn is currently subject to a permanent injunction, sought by the SEC and issued by the United States District Court of Massachusetts in July 2022, which prohibits his involvement in the trading and handling of stocks. A true and correct copy of which is attached as Exhibit 7.

35. This Judgment was issued over a year prior to Quinn's attempt to sell these stock shares to Plaintiffs on October 6, 2023.

//

//

## COUNT I

FRAUD

*(Plaintiffs Against Defendants Brian Quinn and Michael Swan)*

36. Plaintiffs hereby repeats, re-alleges, and incorporates by reference herein all prior allegations in this Complaint.

37. Defendant Quinn falsely represented himself as the CEO of Medipure Holding, Inc. on Equity Purchase Agreements with Plaintiffs.

38. These representations were false as Quinn is not and never was directly affiliated with Medipure.

39. Defendant Swan provided false representations concerning the performance and growth prospects of Medipure stocks to Plaintiffs.

40. Swan's representations falsely claimed that Medipure was profitable and that the stock holdings were sound.

41. Defendants jointly represented that Medipure stocks were priced at a pre-IPO level at the time of Plaintiffs' investments.

42. These representations were false, as Defendants were engaging in the sale of penny stocks of distressed companies without disclosing the status of the companies.

43. Defendants induced, and intended to induce, Plaintiffs to pay them money pursuant to the false Equity Purchase Agreements.

44. Defendants knew their representations were false at the time they were made.

45. Plaintiffs had no knowledge that these representations were false and reasonably relied on the representations of Defendants.

46. Had Plaintiffs known the true and actual facts of Defendants Quinn and Swan's intentions, Plaintiffs would not have executed the Equity Purchase Agreements or paid money to Defendants.

47. Plaintiffs have been required to retain the services of an attorney to prosecute this action and is entitled to reasonable attorneys' fees and costs.

48. The aforementioned actions of Defendants were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages.

## **COUNT II**

FINANCIAL ELDER ABUSE

*(Plaintiffs Walter Kline Against Defendants Michael Swan and Brian Quinn)*

49. Plaintiff hereby repeats, re-alleges, and incorporates by reference herein all prior allegations in this Complaint.

50. Swan and Quinn fraudulently induced Plaintiff, an elderly man over 65 years of age, by inducing them to pay money for a false investment utilizing misrepresentations of fact.

51. Defendants induced Plaintiffs to execute multiple Equity Purchase Agreements and pay money based on those agreements to Quinn., by falsely representing himself as the CEO of Medipure.

52. Plaintiff believed he had purchased 60,000 shares in Medipure stocks for a total of $162,000.00.

53. Defendants and each of them have appropriated and retained the monetary property of Walter Kline, an elder, to a wrongful use within the meaning of California Welfare & Institution Code § 15610.30.

54. In engaging in such conduct, Defendants, and each of, intended to defraud and did defraud Plaintiff within the meaning of Welfare and Institution Code §15610.30.

55. As a direct and proximate result of the wrongful conduct of each Defendant acting jointly and individually, Plaintiff has been deprived of over $150,000.00.

56. In addition to other remedies provided by law, Plaintiff is entitled to recover reasonable attorney's fees and costs for financial elder abuse pursuant to Welfare and Institution Code §15657.5.

57. The conduct of Defendants Quinn and Swan constituted recklessness, oppression, fraud, and malice in the commission of the financial elder abuse, and therefore Plaintiff is entitled to recover punitive and exemplary damages for sake

of example and by way of punishing Defendants for financial abuse pursuant to Welfare and Institution Code §15657.5 and Civil Code §3294.

## COUNT III

VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
Cal. Bus. Prof. Code § 17200 *et seq.*
*(All Plaintiffs Against All Defendants)*

58. Plaintiffs restates and incorporates by reference the above paragraphs as if fully set forth herein.

59. Plaintiffs are "persons" within the meaning of the Cal. Bus. & Prof. Code §17201 ("UCL").

60. By committing the acts and practices alleged herein, Defendants have engaged in unfair business acts and practices in violation of the UCL.

61. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

62. Defendants have violated the UCL's proscription against unfair business practices by, among other things: falsely purporting to sell 68,000 shares of Medipure to Plaintiffs for a total of $170,000.00 when, in fact, they did not own

any shares of Medipure and also never provided any shares of Medipure at any time.

63. Defendants' have engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

64. Plaintiffs have been injured as a direct and proximate result of Defendants' conduct in violation of the UCL.

65. Plaintiffs lost money or property and suffered injury in fact because of Defendants collected and retained, and continued to collect and retain, investments from Plaintiffs without providing and stocks in return, which rightfully belong to Plaintiffs.

66. Plaintiff has been required to retain the services of an attorney to prosecute this action and is entitled to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1. For a declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

2. An injunction against Defendant from engaging in the unlawful practices complained of herein;

3. Awarding Plaintiffs their damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, and any other damages provided under relevant laws;

4. Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from their unjust enrichment;

5. An order awarding Plaintiffs attorneys' fees, costs, and expert costs;

6. An order awarding Plaintiffs pre-judgment and post-judgment interest, as allowed by law; and

7. Such further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

…

Dated this 2nd day of February 2024.

/s/ Sagar Raich
SAGAR RAICH, ESQ.
CALIFORNIA BAR 330427
RAICH LAW PLLC
6785 S. Eastern Ave., Suite 5
Las Vegas, NV 89119
Attorney for Plaintiffs