# Exhibit 2

# Exhibit 2

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH SALE OR DISTRIBUTION MAY BE AFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933.

## EQUITY PURCHASE AGREEMENT

This Equity Purchase Agreement (this "*Purchase Agreement*") is made as of this 25th day of August 2020, by and among **The Walter and Cynthia Kline Trust** ("*Buyer*"), and ***Medipure, Inc. (OCG)***, a Nevada corporation (the "*Corporation*").

### AGREEMENT:

1. **PURCHASE AND SALE.** The Corporation hereby issues and sells to Buyer and Buyer hereby acquire from the Corporation **2,000 shares** of the Corporation's Common Stock (the "*Securities*") currently owned by Seller as of the date of this Purchase Agreement, in exchange for an aggregate Purchase Price of **$5,000.00** ($2.50 per share). The Corporation shall, upon receipt of a fully executed copy of this Purchase Agreement, record this transaction to reflect Buyer's ownership of the Securities in the Corporation's books and records.

2. **SELLER'S REPRESENTATIONS.** Seller represents and warrants to Buyer that:

    (a) Subject to the terms and conditions of the Corporation's Certificate of Incorporation, Seller owns good and marketable title to the Securities, free and clear of all security interests, pledges, liens and encumbrances.

    (b) The Securities shall be transferred and delivered to Buyer free and clear of all security interests, pledges, liens and encumbrances, subject to the terms and conditions of the Corporation's Certificate of Incorporation.

    (c) Seller is the lawful record and beneficial owner of all the Securities.

    (d) Seller has all necessary power and authority to sell, transfer and deliver the Securities to Buyer and to enter into this Purchase Agreement and perform Seller's obligations under this Purchase Agreement, subject to the terms and conditions of the Corporation's Certificate of Incorporation.

    (e) Neither the execution and delivery of this Purchase Agreement, nor the consummation of the transactions contemplated by this Purchase Agreement, conflicts with, will result in a breach of, or constitutes a default under (upon the giving of notice or lapse of time or both) any agreement, contract, lease, license, instrument or other arrangement to which the Corporation is a party or by which the Corporation is bound or to which the Securities are subject.

    (f) This Agreement, assuming valid execution by both parties, is binding upon and enforceable against Seller in accordance with its terms.

3. **BUYER'S REPRESENTATIONS.** Buyer represents and warrants to Seller and the Corporation that:

    (a) Buyer has all necessary power and authority to acquire the Securities, pay the Purchase Price, and enter into this Purchase Agreement and perform its obligations under this Purchase Agreement.

    (b) The Securities are being acquired by Buyer for the account of Buyer, for investment purposes only, and not with a view to, or in connection with, any resale or distribution thereof.

    (c) Buyer has no contract, undertaking, understanding, agreement or arrangement, formal or informal with any person or entity to sell, transfer or pledge to any person or entity all or any part of the Securities, any interest therein or any rights thereto, and Buyer has no present plans to enter into any such contract, undertaking, agreement or arrangement

(d) Buyer acknowledges that, because the Securities have not been registered under the Securities Act of 1933 (the "*Securities Act*"), and because the Corporation has no obligation to effect such registration, Buyer shall continue to bear the economic risk of his investment in the Securities for an indefinite period.

(e) Buyer can bear the substantial economic risks of an investment in the Corporation and to sustain a complete loss of such investment. Buyer recognizes that the acquisition of the Securities involves a high degree of risk. Buyer is cognizant of and understands all the risks related to the purchase of the Securities, including those set forth in Section 6 of this Purchase Agreement pertaining to transferability.

(f) Buyer has adequate net worth and means of providing for his current needs and possible personal contingencies and has no need for liquidity in this investment. Buyer's commitment to investments which are not readily marketable is not disproportionate to his net worth and his acquisition of the Securities will not cause his overall commitment to such investments to become excessive.

(g) Buyer agrees that he will not sell or otherwise transfer the Securities other than in accordance with the terms and conditions of the Corporation's Certificate of Incorporation. It is understood that the Securities cannot be liquidated easily, that no public or other market exists for the Securities, and that no such market is expected to develop.

(h) Buyer is aware that, because the Securities have not been registered under the Securities Act or applicable state securities laws, any resale inconsistent with the Securities Act or applicable state securities laws may create liability on Buyer's part or the part of the Corporation, and agrees not to assign, sell, pledge, transfer or otherwise dispose of the Securities unless they are registered under the Securities Act and applicable state securities laws, or an opinion of counsel satisfactory to the Corporation is given to the Corporation that such registration is not required.

(i) Buyer acknowledges that it understands the meaning and legal consequences of the representations and warranties contained in this Agreement, and hereby agrees to indemnify and hold harmless the Corporation and any affiliate of the Corporation, and the officers, members, managers, associates, agents and employees of the Corporation and their affiliates, and any professional advisers to any of the above parties, from and against any and all loss, damage or liability (including costs and reasonable attorneys' fees) due to or arising out of a breach of any representation, warranty or acknowledgement of Buyer or failure to fulfill any obligation of Buyer, whether contained in this Purchase Agreement or in any other document completed as part of the sale of the Securities to Buyer, or arising out of the sale or distribution by Buyer of any securities in violation of the Securities Act or any applicable state securities laws. Notwithstanding any of the representations, warranties, acknowledgements or agreements made herein by Buyer, Buyer does not hereby or in any other manner waive any rights granted to him under federal or state securities laws.

(j) Buyer acknowledges that all documents, records and books pertaining to this investment have been made available for inspection by him, his counsel, and his accountants. Counsel and accountants for Buyer, and Buyer itself, have had the opportunity to obtain any additional information necessary to verify the accuracy of the contents of the documents presented to them, and to confer with and to ask questions of, and receive answers from, representatives of the Corporation or persons authorized to act on its behalf concerning the terms and conditions of this investment and any additional information requested by Buyer or it representatives. In evaluating the suitability of this investment in the Corporation, Buyer has not relied upon any representations or other information (whether oral or written) other than as set forth in any documents or answers to questions furnished by the Corporation. Buyer is making this investment without being furnished any offering literature other than the documents or answers to questions described above.

(k) Neither the execution and delivery of this Purchase Agreement, nor the consummation of the transactions contemplated by this Purchase Agreement, conflicts with, will result in a breach of, or constitutes a default under (upon the giving of notice or lapse of time or both) any agreement, contract, lease, license, instrument or other arrangement to which Buyer is a party or by which Buyer is bound.

(l) This Purchase Agreement, assuming valid execution by both parties, is binding upon and enforceable against Buyer in accordance with its terms.

4.     **LEGEND**. The certificate or certificates representing the Securities shall bear the following legends (as well as any legends required by applicable state and federal corporate and securities laws):

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH SALE OR DISTRIBUTION MAY BE AFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933.

THE SHARES REPRESENTED BY THIS CERTIFICATE MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF THE CORPORATION'S CERTIFICATE OF INCORPORATION.

5.     **DISPUTE RESOLUTION**. Any controversy or claim arising out of or relating to this Purchase Agreement, or any breach thereof, including, without limitation, any claim that this Purchase Agreement, or any part thereof, is invalid, illegal or otherwise voidable or void, shall be submitted exclusively to final and binding arbitration before, and in accordance with, the Commercial Rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof. All arbitration hearings shall be conducted in Orange County, Florida. This arbitration provision shall be deemed self-executing, and in the event, that either party fails to appear at any properly noticed arbitration proceeding, an award may be entered against such party notwithstanding said failure to appear. Such arbitration shall be conducted by the American Arbitration Association, at its offices and shall be governed by the rules of the American Arbitration Association then in force and effect. The parties agree that the arbitrator shall not have the power to award punitive damages against any party.

6.     **MISCELLANEOUS**.

(a)     The validity, construction, enforcement and effect of this Purchase Agreement shall be governed exclusively by the internal laws of the state of Nevada without regard to its conflicts of laws provisions and shall be construed without regard to any rules of construction regarding the party responsible for the drafting hereof.

(b)     In connection with any legal proceeding arising out of or related to this contract, the prevailing party shall be entitled to recover from the other any and all costs, expenses and reasonable attorneys' fees incurred in such proceedings (including, but not limited to, taxable and non-taxable court costs and other costs, expenses, expert witness fees and reasonable attorneys' fees, whether incurred at trial, in any appeals, administrative proceedings or court-ordered alternative dispute resolution proceedings).

(c)     This Purchase Agreement may not be amended or modified except by a writing signed by both parties hereto.

(d)     The headings of the several clauses in this Purchase Agreement are inserted for convenience only and are not intended to be part of or to affect the meaning or interpretation of this Purchase Agreement.

(e)     The recitals to this Purchase Agreement constitute an integral part hereof and are incorporated herein by reference.

(f)     This Purchase Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior oral or written agreements pertaining thereto.

(g)     Any provision or covenant of this Purchase Agreement that is of a continuing nature or imposes an obligation extending beyond the term of this Purchase Agreement shall survive its expiration or earlier termination.

(h)     If any term or provision of this Purchase Agreement, or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable, the remainder of this Purchase Agreement, or the application of such terms or provision, to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected and every other term and provision of this Purchase Agreement shall be deemed valid and enforceable to the fullest extent permitted by law.

(i)     The failure of either party to enforce or exercise any right under this Purchase Agreement shall not be deemed or construed as a waiver of either party's right to enforce or exercise any such right at any time thereafter.

(j)     The parties expressly agree and understand that time is of the essence with respect to all performance under this Purchase Agreement.

(k)     No party to the Purchase Agreement will pay any type of finder's fee to any other party to this Agreement or to any other individual in connection to this Purchase Agreement.

(l)     All parties to this Purchase Agreement warrant and represent that no investment banker or broker or other intermediary has facilitated the transaction contemplated by this Agreement and is entitled to a fee or commission in connection with said transaction.

(m)     All parties to this Purchase Agreement indemnify and hold harmless all other parties to this Purchase Agreement in connection with any claims for brokerage fees or other commissions that may be made by any party pertaining to this Purchase Agreement.

(n)     This Purchase Agreement may be executed in one or more counterparts, including by signature pages delivered in electronic format, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties identified above have executed this Purchase Agreement as of the date first above written.

The Walter & Cynthia Kline Trust
P.O. Box 752470
Las Vegas, NV 89136

BUYER: The Walter and Cynthia Kline Trust

By: _____
Walter Kline, Trustee

By: _____
Cynthia Kline, Trustee

CORPORATION: Medipure, Inc./ (OCG)

By: _____

Title: _____